**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**AARON CHRISTMAN,** *et al.*                                          **PLAINTIFFS**
*Individually and on Behalf of all Others Similarly Situated*


**v.**                                   **Case No. 4:19-cv-00488-LPR**


**NEW AGE DISTRIBUTING, INC.**                                          **DEFENDANT**

## ORDER

Pending before the Court is Defendant's Motion for Summary Judgment.[1]   Separate Plaintiffs Keith McGee and Carey Barnes are the only remaining Plaintiffs in this case.[2]   They assert individual claims for damages resulting from alleged violations of the FLSA's and AMWA's overtime provisions.[3]   Specifically, Plaintiffs assert that Defendant failed to pay them overtime wages in violation of the FLSA and AMWA.[4]   The FLSA requires employers to pay employees overtime wages no less than one and one-half (1.5) times their regular rate of pay.[5]   The AMWA requires the same under state law.[6]

## Facts and Background

Defendant New Age Distributing, Inc. "is a company that delivers soft drinks by trucks to

---

[1]   Def.'s Mot. for Summ. J. (Doc. 35).

[2]   Named Plaintiffs Aaron Christman and Emanual Savage were dismissed without prejudice on February 7, 2020. *See* Stipulation of Dismissal (Doc. 25).  Named Plaintiff Cecily Patrick was dismissed without prejudice on July 29, 2020.  *See* Order Granting Rule 41 Dismissal (Doc. 41).  On March 8, 2021, the Court granted Defendant's Motion to Decertify the FLSA Collective.  *See* Order Granting Mot. for Decertification (Doc. 52).  As a result, all of the opt-in Plaintiffs were dismissed without prejudice.  *Id.*

[3]   Plaintiffs' collective claims were disposed of when the Court granted Defendant's Motion for Decertification.

[4]   Pls.' First Am. Compl. (Doc. 7) ¶¶ 53-70.

[5]   29 U.S.C. § 207(a)(1).

[6]   ARK. CODE ANN. § 11-4-211.

customers, which range from liquor stores to large grocery [stores]."[7]  Mr. McGee and Mr. Barnes

both worked for Defendant as "Merchandisers."[8]  In a nutshell, "[a] Merchandiser transfers product

delivered from the New Age Distributing Inc. facility to the drop-off site in the store before then

transferring the product to the front of the store where customers purchase the product."[9]  A

Merchandiser's week is typically broken into "load days" and "non-load days."[10]  Load days are

longer and more labor intensive than non-load days.[11]  On load days, a Merchandiser receives the

"load" and participates in restocking both the store itself and also the store's customer-facing

shelves with the received product.[12]  On non-load days, a Merchandiser only restocks the store's

shelves, drawing product from the store's stock that was replenished on the previous load day.[13]

There are more non-load days than load days each week.[14]

Plaintiffs repeatedly say that "each Merchandiser, route, and day was unique."[15]  It is true

that each Merchandiser has a different route that services specific stores in different geographic

locations.[16]  As Defendant explains:

---

[7]  Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶ 1.

[8]  Ex. 7 to Pls.' Mot. for Conditional Certification (Doc. 8-7); Ex. 8 to Pls.' Mot. for Conditional Certification (Doc. 8-8).  Mr. McGee also worked for Defendant as a Salesman and Driver/Helper.

[9]  Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶ 11.  Plaintiffs admit "that this statement describes some duties of Merchandisers." *Id.*  But Plaintiffs deny that this statement "describes all of a Merchandiser's duties . . . ." *Id.*

[10]  *Id.* ¶¶ 13, 14.

[11]  *Id.*  Plaintiffs' only objection to these two statements of fact relate to the specific amount of time that is worked on a given day. *Id.*  Plaintiffs do not object to the underlying fact that load days are generally longer work-days than non-load days. *Id.*

[12]  *Id.* ¶ 13; *see also* Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 14:23-15:12.

[13]  *Id.* ¶ 14.

[14]  Ex. A to Def.'s Mot. for Summ. J. (Doc. 35-1) ¶ 9; Ex. B to Def.'s Mot. for Summ. J. (Doc. 35-2) ¶ 10; Ex. C to Def.'s Mot. for Summ. J. (Doc. 35-3) ¶ 8; Ex. D to Def.'s Mot. for Summ. J. (Doc. 35-4) ¶ 9.  Plaintiffs did not deny Defendant's assertion that the most load days in a week is two.  Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶ 14.

[15]  *Id.* ¶¶ 2, 3, 5.

[16]  *Id.* ¶ 15.

> [Defendant] attempts to keep the length of each route consistent, but every route is different.  Each route visits different stores in different geographic locations.  Each store on each route can have different load days and non-load days, and these days can differ over time.  Each store has a different amount of work required on each distinct day, as some stores are busier or larger than others and therefore require longer hours before the work is completed.  The amount of work changes each season, with summers requiring more hours worked and winters requiring much less hours worked.[17]

Defendant strives to mitigate all of these disparities by "chang[ing] the stores on each route to assure that no Merchandiser is working significantly more or less than any other Merchandiser on a different route."[18]

Plaintiffs concede that Defendant pays its Merchandisers their "full salary" even when they work less than 8 hours a single day or less than 40 hours in a week.[19]   In other words, Merchandisers are salaried employees; they are paid for 80 hours of work on a bi-weekly basis.[20]

In the early stages of this litigation, Mr. McGee and Mr. Barnes submitted nearly identical Declarations.[21]  Both Mr. McGee and Mr. Barnes declared that they "regularly work more than forty hours, even more than fifty hours per week."[22]

---

[17]  *Id.*

[18]  Ex. A to Def.'s Mot. for Summ. J. (Doc. 35-1) ¶ 13; Ex. B to Def.'s Mot. for Summ. J. (Doc. 35-2) ¶ 14; Ex. C to Def.'s Mot. for Summ. J. (Doc. 35-3) ¶ 12; Ex. D to Def.'s Mot. for Summ. J. (Doc. 35-4) ¶ 13.

[19]  Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶ 17.

[20]  Ex. 7 to Pls.' Mot. for Conditional Certification (Doc. 8-7) ¶ 16; Ex. 8 to Pls.' Mot. for Conditional Certification (Doc. 8-8) ¶ 16.  *See generally* Ex. 4 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-4) at 1-37; *see also* Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶ 17.  Mr. McGee's payroll summary indicates that he was paid for at least a full 40 or 80 hours every pay-period except one.  The only time Mr. McGee was not paid for at least 40 or 80 hours of work was on the pay-period for December 9 to December 22, 2018.  Ex. 4 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-4) at 23.  For that pay-period, Mr. McGee was paid for 72 hours of work.  *Id.*  The record indicates that he only worked for 64 hours during that period, and that he drew 8 hours of sick pay.  *Id.*

[21]  Ex. 7 to Pls.' Mot. for Conditional Certification (Doc. 8-7); Ex. 8 to Pls.' Mot. for Conditional Certification (Doc. 8-8).  Former named Plaintiff Cecily Patrick also submitted a nearly identical Declaration.  *See* Ex. 9 to Pls.' Mot. for Conditional Certification (Doc. 8-9).

[22]  Ex. 7 to Pls.' Mot. for Conditional Certification (Doc. 8-7) ¶ 17; Ex. 8 to Pls.' Mot. for Conditional Certification (Doc. 8-8) ¶ 17; *see also* Ex. 9 to Pls.' Mot. for Conditional Certification (Doc. 8-9) ¶ 17.

## I. Mr. McGee

Mr. McGee began working for Defendant in April of 2017.[23]  As far as the Court knows, Mr. McGee is still working for Defendant.  Mr. McGee has held three different positions with Defendant: (1) full-time Merchandiser; (2) Salesman; and (3) Driver/Helper.[24]  On July 8, 2020, Defendant deposed Mr. McGee regarding his allegations of unpaid overtime.[25]  Based on Mr. McGee's testimony and some additional evidence, the Court outlines Mr. McGee's typical work week in each position as follows.

### A.    Full-Time Merchandiser

In April of 2017, Mr. McGee began working for Defendant five days a week as a full-time Merchandiser.[26]  He estimates that he worked from 5:00 a.m. until 1:30 or 2:00 p.m. on Mondays.[27] Mr. McGee's load day was typically on Tuesday.[28]  He estimates that he worked from 7:00 a.m. until 3:00 or 4:30 p.m. on Tuesdays.[29]  Mr. McGee was off on Wednesdays.[30]  Mr. McGee estimates that he worked from 5:30 or 5:45 a.m. until 2:00 or 2:30 p.m. on Thursdays.[31]  And he estimates that he worked from 5:30 or 6:00 a.m. until 4:00 or 4:30 p.m. on Fridays.[32]  Finally, Mr.

---

[23]  Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 11:18-21.

[24]  *Id.* at 62:17-63:11.

[25]  *Id.* at 1:11-14.

[26]  *Id.* at 11:18-12:22.  Mr. McGee initially said that he only worked four days a week as a full-time Merchandiser. *Id.* at 12:7-10.  And he seemed to remain uncertain as to whether he worked four or five days a week.  *Id.* at 32:22-33:20.  Ultimately, Mr. McGee described a five-day workweek, the fifth day being Saturday.

[27]  *Id.* at 13:9-14:4.  Mr. McGee testified that his Mondays started at a Walmart in Pine Bluff and ended at an unidentified store in "Redfield."  *Id.* at 13:9-14:4, 19:2-8.

[28]  *Id.* at 14:20-24.

[29]  *Id.* at 15:13-16:7.  Mr. McGee testified that his Tuesdays started at a Walmart in Pine Bluff and ended at a "Food Smart" grocery store.  *Id.* at 17:1-6.

[30]  *Id.* at 17:7-10.

[31]  *Id.* at 17:11-18:1.  Mr. McGee testified that his Thursdays started at a Walmart in Pine Bluff.  *Id.*

[32]  *Id.* at 18:2-20:15.  Mr. McGee testified that his Fridays started at a Walmart in Pine Bluff.  *Id.*  His second stop was at an unidentified store in Sheridan.  *Id.*  Mr. McGee would then drive back to Pine Bluff.  *Id.*  His Fridays

McGee estimates that he worked from 5:00 a.m. until noon on Saturdays.[33]  He was off on Sundays.[34]  Mr. McGee explained that these "times may vary" depending on "the size of the loads."[35]  But across the board, he believes that these estimates accurately depict his average week as a full-time Merchandiser in 2017 and 2018.[36]

Defendant did not keep any records of Mr. McGee's hours while he was a full-time Merchandiser.[37]  And Defendant did not require Mr. McGee to clock-in as a Merchandiser.[38]  As a result, Defendant does not have any records that would credit or discredit Mr. McGee's daily estimates.  And Mr. McGee does not have any personal records or notations to otherwise substantiate his recollection.[39]  Nor does the record include any affidavits, declarations, or deposition testimony from witnesses who could corroborate Mr. McGee's testimony about his work hours.  Mr. McGee's estimates are based purely on his memory.[40]  Moreover, Mr. McGee could not point to any particular week that he knows with certainty he worked overtime but was not paid for the overtime work.[41]

---

would then conclude at an unidentified store in Stuttgart.  *Id.*

[33]  *Id.* at 20:16-21:4.  Mr. McGee testified that his Saturdays started at a Walmart in Pine Bluff.  *Id.*  He then went to Sheridan, and then back to Pine Bluff.  *Id.* at 21:5-18.  Once back at Pine Bluff, Mr. McGee would service the "Super One on Dollarway," the "Super One on Camden Road," the "Super One on Hayes," and the "Super One on East Harding."  *Id.* at 21:19-22:7.  He would then finish his day at an unidentified store in Stuttgart.  *Id.* at 22:8-15.  Earlier in his testimony, Mr. McGee claimed to also go to "Redfield" on Saturdays.  *Id.* at 19:2-4.  But this was not represented in his subsequent recounting of his Saturday route.  *Id.* at 21:5-22:15.

[34]  *Id.* at 33:12-20.

[35]  *Id.* at 22:17-25.

[36]  *Id.* at 22:17-23:11, 41:4-42:11.

[37]  Plaintiffs were paid as salaried employees.  *See supra* note 20; *see also* Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 25:1-17.

[38]  Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 36:7-13.

[39]  *Id.* at 23:12-24:5; *see also* Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶ 27 ("[A]dmitted that Mr. McGee did not keep written records of his hours worked before Defendant began requiring him to clock in and out . . . .").

[40]  Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 24:3-5, 41:14-42:11.

[41]  *Id.* at 37:16-20, 38:7-25, 40:17-42:19; *see also id.* at 22:17-24:5, 32:22-34:1.

B.      *Salesman (and Part-Time Merchandiser)*

Mr. McGee testified that he "stopped merchandising" and "started being a salesman" sometime in 2018 or 2019.[42]  The record is entirely inconsistent as to when (what month and year) this transition actually occurred or how long it lasted.[43]  And Mr. McGee struggled to keep his days straight when describing his typical week as a Salesman, which involved working three days of the week in sales and two days of the week still merchandising.[44]  Mr. McGee explained that "when you're a salesman you make the orders that go out" to the Merchandiser who "works the loads a salesman sends in."[45]

Mr. McGee recalled the following weekly work-schedule during the indistinct period of time that he was working for Defendant as a Salesman.  On Mondays, Mr. McGee worked as a Merchandiser.[46]  He estimates that he worked from 6:00 or 6:30 a.m. until 1:00 or 1:30 p.m. on

---

[42]  *Id.* at 29:15-30:1, 30:2-31:22, 43:24-45:5.

[43]  *Id.* at 43:24-45:5.  At first, Mr. McGee said that he began working as a Salesman in January or February of 2019. *Id.* at 29:15-30:1.  He then said that he began working sales on some unspecific date in 2018 and stopped in "mid-2019." *Id.* at 30:2-31:22, 43:24-45:5, 62:23-63:10.  Contrary to Mr. McGee's assertions, his payroll summary shows that he only received sales commissions from as early as March 18, 2018, until as late as July 21, 2018.  Ex. 4 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-4) at 14-18; *see also* Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 65:11-22.  Mr. McGee admits that only Salesmen are paid in commission.  Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 64:21-66:19.  But Mr. McGee rejects any implication that he only worked sales from mid-March to mid-July.  *Id.* at 66:2-19.  He maintains that he "was a salesman for longer than four months."  *Id.*

[44]  At first, Mr. McGee asserted that he did not do any merchandising when he was a Salesman.  *Id.* at 31:23-32:6, 46:8-12.  He then testified that he was actually merchandising on Mondays during his time as a Salesman, and that all of the other days of the week were spent working in sales.  *Id.* at 46:23-48:7.  Shortly thereafter, Mr. McGee changed his tune again, this time asserting that he merchandised on both Mondays and Wednesdays while working as a Salesman.  *Id.* at 55:16-58:11.  Despite Mr. McGee's contradictory and confusing testimony, the Court will assume that Mr. McGee worked sales three days a week and merchandised two days a week while holding the title of Salesman.  *Id.* at 62:23-63:5.

[45]  *Id.* at 45:15-46:2.  The record does not contain any additional relevant information regarding a Salesman's duties or responsibilities.

[46]  *Id.* at 48:1-5.

Mondays.[47]  On Tuesdays, Mr. McGee worked as a Salesman.[48]  He estimates that he worked from 6:00 a.m. until either 1:00 to 2:00 p.m. or 3:00 to 4:00 p.m. depending on the stores on his route that week.[49]  On Wednesdays, Mr. McGee was back to merchandising.[50]  He estimates that he worked from 5:00 a.m. until 12:45 p.m. on Wednesdays.[51]  On Thursdays, Mr. McGee worked as a Salesman from approximately 6:15 a.m. until 3:30 or 4:00 p.m.[52]  Mr. McGee was also a Salesman on Fridays.[53]  He estimates that he worked from 5:00 a.m. until 2:30 p.m. on Fridays.[54] Mr. McGee did not work on Saturdays and Sundays.

## C.    Driver/Helper (and Part-Time Merchandiser)

At some point between November 2018 and November 2019, Mr. McGee "became a driver/helper."[55]  Once again, there is no evidence to further narrow this large window of time. Nor is there any evidence detailing the duties or responsibilities of a "driver/helper."

---

[47]  *Id.* at 46:21-48:15.  Mr. McGee testified that his Mondays started in "Fordyce."  *Id.*  From there, he would go to another town.  But he was "not sure what town it was" because "[i]t's been so long."  *Id.* at 47:12-18.

[48]  *Id.* at 48:16-49:3.

[49]  *Id.* at 49:3-51:1.  Mr. McGee testified that his Tuesdays started in "England."  *Id.*  From there, he would go to "12 to 13" unidentified stores in "Stuttgart."  *Id.* at 49:6-23.  Half of the time, his day ended in Stuttgart.  *Id.* at 49:24-51:7.  The other half of the time, Mr. McGee would finish his day at an unidentified store in "Dewitt."  *Id.*

[50]  *Id.* at 56:12-57:3.

[51]  *Id.* at 55:16-58:11.  At first, Mr. McGee could not remember any of the details of his route on Wednesdays.  *Id.* at 55:16-56:13.  But Mr. McGee eventually remembered that he was merchandising on Wednesdays, and that his day started in Pine Bluff.  *Id.* at 56:14-57:12.  Mr. McGee testified that he serviced a Super One in Pine Bluff before finishing his day at unidentified stores in Stuttgart.  *Id.* at 57:18-58:7.

[52]  *Id.* at 51:8-55:15.  Mr. McGee testified that he started his Thursdays somewhere in "Dumas."  *Id.*  From Dumas, he would drive to "McGee," then to "Gould and Grady," and then he would finish his day in "Star City."  *Id.*  Mr. McGee confused his Thursday schedule with his Wednesday schedule.  *Id.* at 54:14-55:20.  And although he "believe[d]" that he gave an accurate recounting of his schedule, he expressed clear reservations as to whether or not he was "remember[ing] correctly" his Thursday schedule.  *Id.* at 54:14-21.

[53]  *Id.* at 59:17-60:7.

[54]  *Id.* at 60:8-62:14.  Mr. McGee testified that he started his Fridays at an unidentified store in Monticello.  *Id.*  He would then go to unidentified locations in "Wilmar" and "Warren" before finishing at an unidentified store in "Calmer."  *Id.*

[55]  *Id.* at 11:22-12:6, 30:2-31:22, 44:13-45:5, 63:6-11.  Because it is unclear when Mr. McGee started and stopped being a Salesman, it is also unclear when he became a Driver/Helper.  *Id.* at 29:15-30:1, 30:2-31:22, 43:24-45:5.

As far as the Court knows, Mr. McGee has worked for Defendant as a Driver/Helper ever since this imprecise start-date.  But even in this capacity, Mr. McGee still works as a Merchandiser one day a week.[56]  On Wednesdays, Mr. McGee works as a Merchandiser from 6:00 a.m. until 11:00 a.m.[57]  Mr. McGee did not offer any additional testimony relating to his typical workweek as a Driver/Helper.  But sometime around May of 2019, Mr. McGee started clocking-in at work.[58]  While it is not exactly clear why this change (from not clocking-in to clocking-in) transpired, it does yield additional insight into Mr. McGee's average workweek as a Driver/Helper.

For the first few months of clocking-in, there is no indication that Mr. McGee worked any overtime.[59]  But from September 29 to December 21, 2019, Mr. McGee's bi-weekly payroll statements indicate that he routinely worked overtime as a Driver/Helper.[60]  Specifically, from September 29 to October 12, 2019, Mr. McGee worked 2.98 hours of overtime.[61]  From October 13 to October 26, 2019, Mr. McGee worked 10 hours of overtime.[62]  From October 27 to November 9, 2019, Mr. McGee worked 5.23 hours of overtime.[63]  From November 10 to November 23, 2019, Mr. McGee worked 4.52 hours of overtime.[64]  From November 24 to

---

[56] *Id.* at 7:18-8:1, 11:9-17, 63:6-13.

[57] *Id.* at 8:2-11:17.  Mr. McGee testified that his Wednesdays begin at an unidentified Walmart in Pine Bluff, Arkansas.  *Id.*  From there, Mr. McGee goes to the "Super One" "on the corner of 28th and Hayes," which is also in Pine Bluff.  *Id.*  Mr. McGee then goes to a "Food Smart," and then to the Super One on Camden Road in Pine Bluff.  *Id.*  Mr. McGee finishes his day after servicing the "Super One located on Dollarway Road" and the "Super One on East Harding."  *Id.*

[58] *Id.* at 35:11-36:3.

[59] Ex. 4 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-4) at 28-33.

[60] *Id.* at 33-37.

[61] *Id.* at 33-34.

[62] *Id.* at 34.

[63] *Id.* at 34-35.

[64] *Id.* at 35.

December 7, 2019, Mr. McGee worked 3 hours of overtime.[65]   And from December 8 to December

21, 2019, Mr. McGee worked 5.52 hours of overtime.[66]

  D. *Totals*

  Before the deposition, Mr. McGee and his counsel indicated in an answer to Defendant's

interrogatories that Mr. McGee "generally worked approximately 55 to 60 hours a week."[67]   At

his deposition, Mr. McGee doubled down on this estimate.[68]   He denied creating this estimate after

filing this lawsuit.[69]   Rather, he explained that he arrived at this estimate while he was working

loads.[70]   More specifically, Mr. McGee said that he came up with this estimate as he was dealing

with loads that were "too heavy."[71]   And he asserted that he complained back then about working

"over 50 hours" to a Salesman and to Dawn Frantz, an executive at New Age.[72]

  Plaintiffs failed to offer any testimony from the Salesman or Ms. Frantz to substantiate Mr.

McGee's claim.   And none of the "typical weeks" described by Mr. McGee in his deposition come

anywhere close to 55 or 60 hours a week.   Based on Mr. McGee's daily estimates in his deposition

testimony, Mr. McGee worked between 41.75 hours and 45.5 hours a week as a full-time

Merchandiser.   And he estimated that he worked between 40 hours and 44.5 hours as a Salesman,

which includes between 14.25 hours and 15.25 hours of merchandising a week.[73]

---

[65] *Id.* at 35-36.

[66] *Id.* at 36.

[67] Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 40:17-21.

[68] *Id.* at 40:21-42:19.

[69] *Id.* at 41:24-42:11.

[70] *Id.*

[71] *Id.*

[72] *Id.* at 41:24-42:24.

[73] Mr. McGee did not provide a daily breakdown of his typical week as a Driver/Helper.  Based on his time clocking in as a Driver/Helper, Mr. McGee appears to have worked 40 hours a week from approximately May 2019 until September 28, 2019.  Ex. 4 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-4) at 28-33.  From September 29, 2019 until December 21, 2019, Mr. McGee worked an average of 42.6 hours a week, or an average

None of Mr. McGee's estimates accounted for holidays, vacations, or sick days.[74]  At the deposition, Mr. McGee acknowledged that there were multiple occasions where he worked less than 80 hours a pay-period.[75]  The Court has reviewed Mr. McGee's payroll summary and has identified nineteen pay-periods where Mr. McGee did not work a full 80 hours for the two-week pay-period.[76]  Mr. McGee concedes that he is not owed any overtime pay on occasions where he did not work a full 80 hours.[77]  Finally, none of Mr. McGee's daily estimates account for lunch breaks or personal breaks, such as restroom breaks.[78]  In fact, Mr. McGee claims to have never taken a lunch.[79]  Instead, he asserts that he would pick up lunch at a drive-through and eat while driving to his next store.[80]

## II.  Mr. Barnes

Mr. Barnes has been a Merchandiser for Defendant "since approximately August of 2017."[81]  The Court does not know if Mr. Barnes is still working as a Merchandiser for Defendant. Aside from Mr. Barnes's previously mentioned "cookie-cutter" Declaration,[82] there are no facts in the record relating to Mr. Barnes's work for Defendant or Mr. Barnes's overtime claims.  Mr. Barnes failed to attend his scheduled deposition, which was supposed to begin at "12:00 noon on

---

of 2.6 hours of overtime a week.  *Id.* at 33-37.  During that time, he only worked 5 hours a week as a Merchandiser.

[74]  Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 67:10-72:1, 74:1-6; *see also* Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶ 28.

[75]  Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 67:10-72:1.

[76]  Ex. 4 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-4) at 6-7, 10-11, 12, 15-16, 16, 19-20, 21-22, 22, 22-23, 23, 23-24, 27, 29, 29-30, 32-33, 33-34, 34-35, 35, 35-36.

[77]  Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 67:10-72:1, 74:1-6.

[78]  *Id.* at 16:8-25, 52:17-22, 58:12-20.

[79]  *Id.* at 16:8-25.

[80]  *Id.*

[81]  Ex. 7 to Pls.' Mot. for Conditional Certification (Doc. 8-7) ¶ 4.

[82]  *See supra* note 21 and accompanying text.

July 8, 2020."[83]

### III. Other Merchandisers and Employees

Former named Plaintiffs Aaron Christman and Emanuel Savage have both worked in some capacity as Merchandisers for Defendant.[84]  Both of them provided deposition testimony.  Mr. Christman testified that a Merchandiser could work anywhere from 6 to 12 hours a day depending on what is selling and the time of the year.[85]  But a Merchandiser should generally be able to finish his route in under 8 hours.[86]  Mr. Christman testified that Merchandisers are able to work at their own pace.[87]  And he opined that the only way a Merchandiser would ever work 55 to 60 hours a week would be if a Merchandiser sat idle in a store or parking lot wasting time.[88]  But Mr. Christman also acknowledged that each Merchandiser worked independently on different routes and that he could not attest to what was specifically required of another Merchandiser.[89]

Former named Plaintiff Emanuel Savage also testified.  But Mr. Savage has never worked as a full-time Merchandiser.[90]  He has only ever worked as a fill-in Merchandiser.[91]  Mr. Savage testified that he typically works between 4 to 8 hours a day when he is asked to fill in as a

---

[83] Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶ 9; Ex. H to Def.'s Mot. for Summ. J. (Doc. 35-8) at 5:1-23.  It seems likely that Mr. Barnes expected to be dismissed from the Complaint.  Ex. H to Def.'s Mot. for Summ. J. (Doc. 35-8) at 5:1-19.  Indeed, Plaintiffs' counsel had still not heard from Mr. Barnes nearly two months after Mr. Barnes failed to attend his deposition.  *See* Aug. 31, 2020 Hr'g Tr. (Doc. 48) at 38-41.  But as of the date of this Order, Plaintiffs' counsel has not moved to dismiss Mr. Barnes under Rule 41.

[84] Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶¶ 6, 7; Ex. 2 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-2); Ex. 3 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-3).

[85] Ex. 2 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-2) at 16:14-21, 26:12-23.

[86] *Id.* at 17:16-17:23.

[87] *Id.* at 16:22-17:23, 32:8-12.

[88] *Id.* at 16:22-17:7.

[89] *Id.* at 40:6-15.

[90] Ex. 3 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-3) at 10:24-12:10.

[91] *Id.*

Merchandiser.[92]  Mr. Savage testified that he has "never worked any [days] over eight" hours as a Merchandiser.[93]

Finally, Defendant provided Declarations from some of its employees.[94]  The first two Declarations belong to Defendant's Chief Financial Officer, Dawn Frantz,[95] and Defendant's General Manager, Rick Davis.[96]  Both Ms. Frantz and Mr. Davis claim that they "have supervised Merchandisers that have worked every route, and none have ever worked more than forty (40) hours per week." [97]  Plaintiffs concede that Ms. Frantz and Mr. Davis have "some knowledge of Merchandiser routes."[98]  But Plaintiffs reject any implication that Ms. Frantz and Mr. Davis know how many hours individual Merchandisers work from day to day.[99]

The last two Declarations belong to Varick Lott and Marlos Finley.[100]  Both Mr. Lott and Mr. Finley worked for over five years as Merchandisers for Defendant.[101]  Mr. Lott and Mr. Finley claim to have "worked every route and been to every store as a Merchandiser" for Defendant.[102]  Mr. Lott and Mr. Finley assert that they have worked every route in existence and that no route has ever required them to work more than 40 hours a week.[103]  Plaintiffs' response is that "each

---

[92]  *Id.* at 14:7-17.

[93]  *Id.* at 14:15-17.

[94]  Ex. A to Def.'s Mot. for Summ. J. (Doc. 35-1); Ex. B to Def.'s Mot. for Summ. J. (Doc. 35-2); Ex. C to Def.'s Mot. for Summ. J. (Doc. 35-3); Ex. D to Def.'s Mot. for Summ. J. (Doc. 35-4).

[95]  Ex. A to Def.'s Mot. for Summ. J. (Doc. 35-1) ¶ 3.

[96]  Ex. B to Def.'s Mot. for Summ. J. (Doc. 35-2) ¶ 3.

[97]  Ex. C to Def.'s Mot. for Summ. J. (Doc. 35-3) ¶ 14; Ex. D to Def.'s Mot. for Summ. J. (Doc. 35-4) ¶ 15.

[98]  Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶¶ 2, 3.

[99]  *Id.*

[100]  Ex. C to Def.'s Mot. for Summ. J. (Doc. 35-3); Ex. D to Def.'s Mot. for Summ. J. (Doc. 35-4).

[101]  Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶ 4; Ex. C to Def.'s Mot. for Summ. J. (Doc. 35-3) ¶ 3; Ex. D to Def.'s Mot. for Summ. J. (Doc. 35-4) ¶ 3.

[102]  Ex. C to Def.'s Mot. for Summ. J. (Doc. 35-3) ¶ 13; Ex. D to Def.'s Mot. for Summ. J. (Doc. 35-4) ¶ 14.

[103]  Ex. C to Def.'s Mot. for Summ. J. (Doc. 35-3) ¶ 13; Ex. D to Def.'s Mot. for Summ. J. (Doc. 35-4) ¶ 14.

Merchandiser, route, and day was unique," so Mr. Lott's and Mr. Finley's experiences are not relevant to Plaintiffs' experiences.[104]

### Controlling Law

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[105]  The movant bears the initial burden of showing (1) the absence of a genuine dispute as to any material fact and (2) that a rational juror could not possibly find for the nonmoving party based on the undisputed facts.[106]  If the movant successfully makes this showing, the burden then shifts to the nonmoving party to establish that there is some genuine and material issue to be determined at trial.[107]  The nonmoving party may not rest solely upon the allegations in its pleadings.[108]  To survive summary judgment, the nonmoving party "must demonstrate the existence of specific facts" supported by sufficient probative evidence that would permit a favorable finding "on more than mere speculation, conjecture, or fantasy."[109]  If the nonmoving party can present specific facts by "affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial," then summary judgment is not appropriate.[110]

Of course, the mere existence of a disputed fact will not bar summary judgment.[111]  The dispute must be genuine, which means the evidence could cause a reasonable jury to decide the

---

[104] Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶ 5.

[105] FED. R. CIV. P. 56(a).

[106] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[107] *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).

[108] *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).

[109] *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017) (citing *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[110] *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005).

[111] *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

particular question of fact for either party.[112]  And the disputed fact must be material, meaning the resolution of the dispute will be outcome determinative under the controlling law.[113]

"An employee who sues for unpaid overtime 'has the burden of proving that he performed work for which he was not properly compensated.'"[114]  Section 211(c) of the FLSA tasks employers with tracking and recording their employees' work time.[115]  When an employer fails to keep wage and hour records, employees cannot be denied recovery because the precise extent of their work cannot be proven.[116]  In such circumstances, an employee can recover for worktime "if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[117]

Plaintiffs argue that the Court should apply the relaxed evidentiary standard set forth in *Anderson v. Mt. Clemmons Pottery Co.*[118]  But this Court has repeatedly explained that the "relaxed standard" in *Anderson* is not used for proving liability.[119]  Rather, *Anderson* relaxed the standard for proving "the amount of damages."[120]  Said differently, the "relaxed standard" only applies once

---

[112] *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008); *Anderson*, 477 U.S. at 248.

[113] *Holloway*, 884 F.2d at 366.

[114] *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

[115] 29 U.S.C. § 211(c).

[116] *Anderson*, 328 U.S. at 687; *Dole v. Tony & Susan Alamo Found.*, 915 F.2d 349, 351 (8th Cir. 1990); *Zornes v. Thompson Transportation Inc.*, No. 4:19-CV-00474-LPR, 2020 WL 6438252, at *7 (E.D. Ark. Nov. 2, 2020).

[117] *Anderson*, 328 U.S. at 687.

[118] Pls.' Resp. in Opposition to Def.'s Mot. for Summ. J. (Doc. 42).

[119] *Zornes*, 2020 WL 6438252, at *7; *Thompson v. DiMichele Enterprises, Inc.*, No. 4:18-CV-00903-LPR, 2020 WL 1285040, at *6 (E.D. Ark. Jan. 3, 2020).

[120] *Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013) ("*Anderson* only applies where the existence of damages is certain.  *Anderson* allows uncertainty only for the amount of damages.") (internal citation omitted); *see also Holaway*, 771 F.3d at 1060 (noting that even under the relaxed standard of proof, after the employee has shown the work that he or she performed was not compensated and provided sufficient evidence of the amount and extent of the work, then the burden "shifts to the employer to produce evidence to dispute the reasonableness of the inference").

the plaintiff employee has already proven that "he has performed work and has not been paid in accordance with the statue."[121]  To determine liability, the standard of proof is always the same: the employee must prove by a preponderance of the evidence that he performed uncompensated work.[122]  To be clear, a plaintiff must show that he worked over 40 hours (and was not compensated properly for the overtime) in at least one week before the "relaxed standard" comes into play.

A plaintiff employee's evidentiary burden can be satisfied in different ways, such as time records or testimony.   But—even under the relaxed standard—relying "mainly just [on] recollections of [the employee's] daily activities" does not suffice, at least where those recollections are general and vague.[123]  A plaintiff employee must provide a meaningful, consistent explanation of the hours the employee claims to have worked.[124]  This explanation must include "details which would allow a jury to determine" that the plaintiff employee worked the claimed overtime.[125]  Vague and unspecific testimony will not do.[126]  A plaintiff employee should point to "specific dates worked, specific hours worked, or money owed."[127]  "[U]nsupported estimations of the unpaid hours due are not enough."[128]  And, of course, to succeed on an overtime claim, the employee must also show that his employer knew, or should have known, that the employee was working the claimed overtime.

---

[121] *Anderson*, 328 U.S. at 688.

[122] *Thompson*, 2020 WL 1285040, at *6.

[123] *Holaway*, 771 F.3d at 1058–60.

[124] *Id.* at 1060.

[125] *Id.*

[126] *Id.*

[127] *Carmody*, 713 F.3d at 407.

[128] *Id.*

## Discussion

The facts in this case closely track the facts in *Bailey v. New Age Distrib., Inc.*, which involved the same Defendant and one of the named Plaintiffs in this case.[129]  The plaintiffs in *Bailey*—including Mr. McGee—sued New Age Distributing LLC for unpaid overtime under the FLSA and AMWA.[130]  The suit was brought both individually and on behalf of employees working as "drivers, helpers and drivers/helpers" for New Age.[131]  New Age moved for summary judgment, and the district court granted its motion.[132]  In so ruling, the district court specifically discounted the plaintiffs' "virtually identical declarations which claim[ed] each declarant worked the exact same hours, lunched at the same fast food restaurants[,] and fail[ed] to account for any holiday, vacation or sick day."[133]  The district court found that these declarations were "unsupported by any record evidence" and were "overinclusive and uncorroborated."[134]  Accordingly, the district court concluded that the plaintiffs in *Bailey* failed to provide "details which would allow a jury to determine [they] worked beyond forty hours in any specific week of [their] employment."[135]  The plaintiffs appealed the district court's ruling, and the Eighth Circuit affirmed the ruling.[136]

For the most part, Mr. McGee and Mr. Barnes have failed to produce sufficient evidence supporting their allegations of unpaid overtime.  The only record evidence relating to Mr. Barnes's

---

[129] *Bailey v. New Age Distrib., Inc.*, No. 4:18CV00538 JM, 2019 WL 6249395, at *1-2 (E.D. Ark. Nov. 21, 2019).

[130] *Id.* at *1-2 ("In support of their claims, Plaintiffs produced twelve virtually identical declarations from Plaintiffs . . . Keith McGee . . . .").  Inexplicably, Mr. McGee testified during his deposition that he did not know about "another lawsuit with the driver[s] and helpers."  Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 24:10-13.

[131] *Bailey*, 2019 WL 6249395, at *1.

[132] *Id.* at *1-3.

[133] *Id.* at *3.

[134] *Id.*

[135] *Id.* (quoting *Holaway*, 771 F.3d at 1060).

[136] *Bailey v. New Age Distrib. Inc.*, 823 F. App'x 451, 452 (8th Cir. 2020) (unpublished).

overtime claim is Mr. Barnes's Declaration stating that he "regularly work[s] more than forty hours, even more than fifty hours per week."[137]   As was the case in *Bailey*, Mr. Barnes's Declaration is nearly identical to Mr. McGee's.  Aside from this self-serving Declaration, Plaintiffs did not identify any evidence specific to Mr. Barnes.  Indeed, Mr. Barnes failed to attend his own deposition.  Thus, even taking all of the facts in the light most favorable to Plaintiffs, and even if the Court applied the relaxed standard at the liability stage, Plaintiffs have utterly failed to produce any evidence substantiating Mr. Barnes's overtime claims.

The same can be said of Mr. McGee's overtime claims while working as a Merchandiser and as a Salesman.  While Mr. McGee did provide some detail regarding his typical workday and workweek as a full-time Merchandiser and as a Salesman, his uncorroborated recollected estimates amount to nothing more than his "best guess" as to the hours he worked each day and each week. Mr. McGee's estimates were generally vague, contradictory, and overinclusive.  For example, Mr. McGee generally said that he worked 55 to 60 hours a week, but then described only 40 to 45.5 hours of work when forced to breakdown his estimate.  Additionally, Mr. McGee could not even remember what month or year he "stopped merchandising" and "started being a salesman."[138]  Nor could he remember what year or month he stopped being a Salesman and became a Driver/Helper.[139]  And Mr. McGee admitted that he could not identify a single specific week in which he worked over 40 hours.[140]

Plaintiffs vehemently oppose Defendant's reliance on any declaration or testimony that

---

[137] Ex. 7 to Pls.' Mot. for Conditional Certification (Doc. 8-7) ¶ 17.

[138] *See supra* notes 42 and 43.

[139] *Compare* Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 11:22-12:6, *with id.* at 30:2-31:22, *and id.* at 63:6-11, *and id.* at 65:17-66:19.  Because it is unclear when Mr. McGee started and stopped being a Salesman, it is also unclear when he became a Driver/Helper.  *Id.* at 29:15-30:1, 30:2-31:22, 43:24-45:5.

[140] *Id.* at 37:16-20, 38:7-25, 40:17-42:19; *see also id.* at 22:17-24:5, 32:22-34:1.

does not account for the individualized nuances of Mr. McGee's unique routes and loads.[141] Plaintiffs are correct to apply such scrutiny.[142]  But what's good for the goose is good for the gander.  Mr. McGee's rough estimates of ranges of hours he remembers working are substandard given Plaintiffs' assertion that "each . . . day was unique."[143]  His daily descriptions rarely identify any of the specific stores that he visited on each "unique" route.[144]  And Mr. McGee struggled to even recount all of the towns that he visited on a each particular day.[145]

Mr. McGee's completely uncorroborated estimates fare no better than those seen in *Holaway v. Stratays, Inc.*[146]  The plaintiff in *Holaway* estimated that he typically worked 60 hours a week.  He based this approximation on "mainly just recollections of his daily activities."[147]  More specifically, the plaintiff in *Holaway* offered rough estimates for the time that he spent each week working before 8 a.m. and after 5 p.m., the time he spent driving and writing expense reports, and the time he spent working on the weekends.[148]  But the plaintiff in *Holaway* "failed to put forth

---

[141] Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶¶ 2, 3, 5.

[142] Defendant filed a Motion to Decertify the FLSA collective.  Def.'s Mot. to Decertify (Doc. 38).  Defendant argued that the collective should be decertified because the facts in this case require a "highly individualized inquiry into the circumstances of every day of the week."  Def.'s Br. in Supp. of Mot. to Decertify (Doc. 39) at 2-6.  Plaintiffs did not oppose Defendant's Motion, and the Court granted the Motion.  *See* Order Granting Mot. for Decertification (Doc. 52).

[143] Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶¶ 2, 3, 5.

[144] For example, Mr. McGee broadly asserts that when he was working as a Salesman, he would visit "12 to 13" unidentified stores in "Stuttgart" on Tuesdays. Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 49:6-23.  On Fridays, he states he worked as a Salesman in Monticello, Wilmar, Warren, and Calmer.  *Id.* at 60:8-62:14.  But Mr. McGee fails to specify a single store at any of these locations.  This is true of most of his daily descriptions.  *See supra* notes 27, 29, 31, 32, 33, 47, 49, 51, 52, 54, and 57.

[145] Mr. McGee testified that on Mondays as a Salesman, he would start in "Fordyce" before going to another town.  Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 46:21-48:15.  But he was "not sure what town it was" because "[i]t's been so long."  *Id.* at 47:12-18.  Similarly, Mr. McGee could not readily remember any of the details of his routes on Wednesday during his time as a Salesman.  *Id.* at 56:3-11.  And although Mr. McGee testified that he went to "Redfield" on Saturdays while working as a full-time Merchandiser, "Redfield" was never mentioned as a Saturday stop in his subsequent recounting of his Saturday route.  *Id.* at 19:2-4, 20:16-22:15.

[146] *Holaway*, 771 F.3d at 1058-60.

[147] *Id.* at 1058.

[148] *Id.*

any evidence regarding specific weeks where he worked beyond forty hours."[149]  Both the district court and the Eighth Circuit reasoned that these estimates were not enough to survive summary judgment.  Despite allocating specific hours to specific acts, the Eighth Circuit concluded that the plaintiff's estimations were "contradictory," "bare," "vague," and uncorroborated.[150]  The plaintiff in *Holaway* failed to demonstrate "sufficient evidence to show the amount and extent of overtime work . . . as a matter of just and reasonable inference."[151]

Like the plaintiff in *Holaway*, Mr. McGee based his estimates on "mainly just recollections of his daily activities."[152]  And like the plaintiff in *Holaway*, Mr. McGee failed to identify a single specific week where he worked beyond 40 hours as a Merchandiser and as a Salesman.[153]  Instead of identifying specific weeks in which he was not compensated for overtime work, Mr. McGee clung to his contradictory and unsubstantiated assertion that he "routinely" worked 55 to 60 hours a week.[154]  He maintained this position at his deposition even though his testimony regarding his daily hours suggested a far lower number of hours "generally" worked per week as a Merchandiser and as a Salesman.[155]  And similar to the facts in *Bailey*, Mr. McGee's estimations did not account for "any holiday, vacation or sick day."  Nor did they account for any personal breaks, which Mr. McGee admitted he occasionally took.

For all of the foregoing reasons, the Court concludes that Mr. McGee has not identified a

---

[149] *Id.* at 1060.

[150] *Id.* at 1059-60.

[151] *Id.*

[152] Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 23:12-24:5, 41:14-42:11; *see also* Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43) ¶ 27 ("[A]dmitted that Mr. McGee did not keep written records of his hours worked before Defendant began requiring him to clock in and out . . . .").

[153] Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 37:16-20, 38:7-25, 40:17-42:19; *see also id.* at 22:17-24:5, 32:22-34:1.

[154] *Id.* at 40:17-42:11.

[155] *See supra* notes 67-73 and accompanying text.

19

genuine issue of material fact regarding his overtime claims as a Merchandiser and as a Salesman. While the parties certainly dispute the hours Mr. McGee worked as a Merchandiser and as a Salesman, the dispute is not genuine.  Plaintiffs failed to produce evidence that could cause a rational jury to decide the particular question of fact in his favor.[156]  Said differently, Plaintiffs did not identify details which would allow a rational jury to determine that Mr. McGee worked (without appropriate pay) beyond 40 hours in any specific week of his employment as a Merchandiser or as a Salesman.  Unsupported estimates of unpaid hours due are simply not enough.[157]

This leaves only Mr. McGee's work as a Driver/Helper.  As an initial matter, it should be noted that the overwhelming focus of this case is on a Merchandiser's roles, responsibilities, and pay.  Neither Plaintiffs nor Defendant provide much in the way of facts relating to Driver/Helpers. It stands to reason that Mr. McGee's work as a Driver/Helper is only mentioned insofar as it sheds additional light on his work as a full-time Merchandiser.  Indeed, even when discussing his current schedule as a Driver/Helper, Mr. McGee only testified regarding the hours he works on the one day of the week (Wednesday) that he is still merchandising.[158]  To the extent that Mr. McGee's testimony on this topic relates back to his claim for overtime as a Merchandiser, it fails to tip the analysis in his favor.  On the contrary, Mr. McGee testified that he only works 5 hours a day as a Merchandiser in his current capacity as a Driver/Helper.[159]

It is possible that Mr. McGee is claiming FLSA and AMWA violations for unpaid overtime while working as a Driver/Helper.  If that is the case, there is certainly some evidence corroborating

---

[156] *Miner*, 513 F.3d at 860; *Anderson*, 477 U.S. at 248.

[157] *Carmody*, 713 F.3d at 407.

[158] Ex. 1 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-1) at 7:18-11:17, 63:6-13.

[159] *Id.* at 8:2-11:17.

his claim of unpaid overtime.  Indeed, Mr. McGee's payroll summary reveals six, two-week pay-periods in which Mr. McGee worked an average of 2.6 hours of overtime a week.[160]  Although Mr. McGee was partially compensated for this overtime work, he was not compensated at one and one-half times his regular pay.[161]  These payroll summaries indicate that it was not uncommon for Mr. McGee to work overtime as a Driver/Helper, and that, when he did work overtime, he may not have been appropriately compensated.  Thus, it seems that Plaintiffs have identified a genuine question of material fact as to whether Mr. McGee was properly compensated for overtime work as a Driver/Helper.

There is another wrinkle, however.  As far as the Court can tell, Mr. McGee already pursued an overtime claim for his work as a Driver/Helper in *Bailey*, which was "dismissed with prejudice" after the district court granted New Age's motion for summary judgment.[162]  Notwithstanding that prejudicial dismissal, Defendant has not argued that Mr. McGee is estopped from asserting an overtime claim in this case for work relating to his position as a Driver/Helper.  Presumably, that is because this case was originally advanced as a collective action on behalf of "all merchandisers employed by Defendant."[163]  But Mr. McGee's and Mr. Barnes's individual claims for violations of the FLSA and AMWA are not expressly limited to work as Merchandisers.[164]  The Complaint

---

[160] Ex. 4 to Pls.' Resp. to Def.'s Statement of Material Facts (Doc. 43-4) at 33-37.

[161] Defendant's failure to fully compensate Mr. McGee for *documented* overtime as a Driver/Helper does not save Mr. McGee's claims that he worked *undocumented* overtime as a full-time Merchandiser or as a Salesman.  Indeed, Plaintiffs have not provided the Court with any reason to believe that the responsibilities, hours, and requirements of a full-time Merchandiser are the same as a full-time Driver/Helper.  To the contrary, Plaintiffs have affirmatively argued that a Merchandiser's work is so unique that it cannot even be fairly compared to the work of another Merchandiser.  Thus, Plaintiffs cannot rely on evidence of improperly paid overtime for one employment position as evidence of undocumented overtime in an entirely different position.  On this record, such extrapolation would be entirely speculative.

[162] *Bailey*, 2019 WL 6249395, at *3.

[163] Pls.' First Am. Compl. ¶¶ 53-70.

[164] *Id.*

simply states that the named Plaintiffs—at this point, only Mr. McGee and Mr. Barnes—are entitled to overtime wages under the FLSA and AMWA.

The Court will hold this portion of the Summary Judgment Motion in abeyance. The parties are ordered to submit supplemental briefs explaining: (1) whether Mr. McGee is asserting in this case an individual claim for unpaid overtime wages during his time as a Driver/Helper; (2) if he is, whether he is prevented from doing so under doctrines of res judicata and collateral estoppel (or for some other reason); and (3) whether Defendant has waived any res judicata or collateral estoppel arguments.

## Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is GRANTED in part and HELD IN ABEYANCE in part. Summary judgment is granted to Defendant on Plaintiffs' claims relating to Mr. McGee's time as a Merchandiser and as a Salesman, as well as on all of the claims relating to Mr. Barnes. As to Mr. McGee's time as a Driver/Helper, the parties are ordered to submit supplemental briefs of no more than five (5) pages. The briefing is due simultaneously. Each brief is due within fourteen (14) days of the date of this Order.

IT IS SO ORDERED this 17th day of March 2021.

LEE P. RUDOFSKY
UNITED STATES DISTRICT COURT